EL PUEBLO DE PUERTO RICO, apelado, *v.* RAFAEL MORENO MORALES, acusado y apelante.

*Número:* CR-89-2          *Resuelto:* 21 de diciembre de 1992

*Carlos Ortiz Santiago* y *Olga Birriel Cardona,* abogados del apelante; *Alejandro Salgado Rivera, Fiscal Especial Independiente,* y *Lillian Cruz Fortier, Fiscal Especial Independiente Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El Fiscal Especial Independiente (F.E.I.) acusó a Rafael Moreno Morales de cinco (5) cargos de perjurio cometidos,

alegadamente, mientras prestó deposición ante la Comisión de lo Jurídico del Senado (Comisión) durante la investigación de los sucesos acaecidos el 25 de julio de 1978 en el Cerro Maravilla.

En el Tribunal Superior, Sala de San Juan, un Jurado lo absolvió en cuatro (4) cargos, pero rindió veredicto de culpabilidad en torno a que el 20 de septiembre de 1983 declaró "que el día 25 de julio de 1978 a eso del mediodía cuando llegó a la Torre de Rikavisión en el Cerro Maravilla, traían a una persona herida cargándola, a la cual recibió instrucciones de llevar inmeditamente al hospital. Además, que al llegar allí le informaron que había un herido, lo montaron en el carro inmediatamente y se marchó de allí para llevarlo al hospital, refiriéndose a Carlos Soto Arriví, *conociendo la falsedad de lo declarado y siendo la verdad que cuando el acusado llegó al Cerro Maravilla, Carlos Soto Arriví se encontraba bajo arresto y fue con posterioridad al disparo que le hizo el acusado y le dio muerte que recibió instrucciones de llevarlo al hospital*". (Énfasis suplido.)

El tribunal (Hon. Fernando González Rodríguez, Juez) lo sentenció a seis (6) años de presidio consecutivos con cualquier otra sentencia que estuviera cumpliendo. Apeló.

Para fines dispositivos, analizaremos sólo su reclamo de que debió absolvérsele a base de que la prueba demostró que la persona que le tomó el juramento cuando declaró ante la Comisión Senatorial, su Secretario Ejecutivo, Lcdo. Ariel Nazario Álvarez, no estaba autorizado legalmente. Aduce que la actuación del licenciado Nazario Álvarez fue en abierta violación de la Regla 6(E) del Reglamento para Regir la Investigación Senatorial sobre Cerro Maravilla (en adelante Reglamento), P. del S. 91. Veamos.

## II

El Art. 225 del Código Penal tipifica en nuestra jurisdicción el delito de perjurio.[1] En *Pueblo v. Pérez Casillas*, 117 D.P.R. 380, 394–398 (1986), resolvimos que una declaración ante una comisión legislativa sobre la certeza de un hecho esencial, conociendo su falsedad, constituía perjurio. Dijimos, además, que el lenguaje del transcrito Art. 225 (33 L.P.R.A. sec. 4421) constituye "la ley sustantiva que aplica tanto a los procesos comenzados por los cuerpos legislativos a tenor con lo dispuesto en el Código Político, como cuando la acusación es presentada por la Rama Ejecutiva". *Pueblo v. Pérez Casillas*, supra, págs. 397–398. El delito existe cuando "se ha desfigurado la verdad, declarando un hecho falso que ofende a la debida administración de la justicia". D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 383.

En esta apelación no es menester precisar la verdad de los hechos —véase *Pueblo v. Moreno Morales I*, 132

---

[1] Dispone:

"Toda persona que habiendo jurado testificar, declarar, deponer o certificar la verdad ante cualquier tribunal, organismo, funcionario o persona competente, en cualesquiera de los casos o procedimientos en que la ley permitiera tomar tal juramento, declare ser cierto cualquier hecho esencial, conociendo su falsedad o declare categóricamente sobre un hecho esencial cuya certeza no le conste, será sancionada con pena de reclusión por un término fijo de seis (6) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cuatro (4) años.

"También incurrirá en perjurio toda persona que bajo las circunstancias establecidas en el párrafo anterior, prestare dos o más testimonios, declaraciones, deposiciones o certificaciones irreconciliables entre sí. En este caso será innecesario establecer la certeza o falsedad de los hechos envueltos.

"Cuando una persona declarare incurriendo en perjurio y dicha declaración tuviere como consecuencia la convicción y reclusión del acusado, establecido este hecho, se considerará como delito agravado de perjurio a los fines de la imposición de la pena, la cual será de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de quince (15) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años." 33 L.P.R.A. sec. 4421.

D.P.R. 261 (1992)— pues se cuestiona un aspecto elemental del delito, a saber, la capacidad del licenciado Nazario Álvarez, funcionario del Senado, para tomar el juramento. Aunque el Art. 227 del Código Penal, 33 L.P.R.A. sec. 4423, prohíbe las defensas fundamentadas en haberse prestado o tomado el juramento en forma irregular, o que el imputado carecía de aptitud para dar testimonio, o que ignoraba la importancia de la declaración falsa, ello no impide que se levante como defensa que la declaración se prestó ante una persona no autorizada por ley. Se trata de una cuestión sustantiva que incide crucialmente en uno de los elementos esenciales del delito de perjurio. Nevares-Muñiz, *op. cit.*, pág. 384.

Así, al interpretar el derogado Art. 89 del antiguo Código de Enjuiciamiento Criminal, habíamos decidido que era "evidente que el gobierno debe alegar y probar que el funcionario que tomó el juramento estaba debidamente autorizado para ello". *Pueblo v. Lugaró*, 33 D.P.R. 859, 860 (1924).[2]

## III

Nuestra Constitución reconoce la facultad de los cuerpos legislativos para crear comisiones permanentes y delimitar su jurisdicción y facultades. Entre éstas se destaca la Comisión. Véanse, en general: *Silva v. Hernández Agosto*, 118 D.P.R. 45, 66–67 (1986); Art. III, Sec. 9 *et seq.*

---

[2] Con carácter mayoritario, igual norma subsiste en Estados Unidos. La persona no puede ser convicta por perjurio a menos que su declaración sea tomada por un funcionario debidamente facultado. R.M. Perkins y R.N. Boyce, *Criminal Law*, 3ra ed., Ed. Foundation Press, 1982, pág. 514 y casos allí citados. Como corolario de esta norma, el Estado debe probar que el funcionario estaba autorizado de jure y no tan sólo de facto. El hecho de que el funcionario actúe en esta última capacidad, opera a modo de evidencia prima facie de su autoridad legal para hacerlo, de modo que el Fiscal no está obligado, inicialmente, a ir más allá para demostrar la existencia de tal facultad. Véanse, además: *Brooks v. United States*, 240 F.2d. 905, 906 (5to Cir. 1952); Perkins y Boyd, *op. cit.*; 4 *Wharton's Criminal Law* Secs. 612–613, págs. 335–337 (1978).

de nuestra Constitución, L.P.R.A., Tomo 1. El poder de realizar investigaciones legislativas implica que sus comisiones pueden ordenar la comparecencia de testigos y compelerlos a testificar. Arts. 31–34 del Código Político, 2 L.P.R.A. secs. 151–154; Art. 7(1) de la Ley de Procedimiento y Concesión de Inmunidad a Testigos, 1 L.P.R.A. sec. 596(1). Sus miembros están autorizados por ley a recibir sus juramentos. Art. 23 del Código Político, 2 L.P.R.A. sec. 5.

▬▬▬ Indudablemente, el poder de citar y obtener declaraciones de testigos, bajo apercibimiento de perjurio, es una de las herramientas más efectiva de los cuerpos legislativos. Sin embargo, bajo nuestro esquema constitucional, toda condena por perjurio criminal está sujeta al principio de legalidad. La Regla 6(E) del aludido reglamento disponía:

> Todo testigo que presente testimonio en Sesión Ejecutiva o Pública de la Comisión lo hará bajo juramento o afirmación, *el cual le será administrado por el Presidente de la Comisión o un miembro de la misma.* (Énfasis suplido.) Alegato del apelante, págs. 25–26.

▬▬▬ No es difícil reconocer su lenguaje *limitante*: únicamente el Presidente y sus miembros. Significa, en el caso de autos, que el licenciado Nazario Álvarez no estaba autorizado a administrar juramento a los deponentes. En consecuencia, no procedía la convicción por perjurio.

## IV

Contra esta conclusión no son persuasivos los argumentos del F.E.I. de que el licenciado Nazario Álvarez podía actuar a base de "una delegación expresa de autoridad", conferida por el Presidente de la Comisión o en virtud de "la doctrina de oficial *de facto*", o por su condición de notario público. Nos explicamos.

En *primer* lugar, según lo expuesto, la norma jurídica vigente es que el juramento lo administre un funcionario *facultado en ley*, condición que implica una autorización de jure, no tan sólo de facto. No es suficiente, pues, aducir que el licenciado Nazario Álvarez actuaba mediante delegación o *de facto*, cuando el propio Reglamento no lo estipulaba. Por razones que no nos corresponde examinar, el Senado específicamente reiteró que esa facultad correspondía *sólo a su Presidente y a sus miembros*. Aunque muy bien pudo haberla ampliado, no lo hizo.

En *segundo* lugar, la interpretación propuesta por el F.E.I. es contraria al principio básico que precogniza la interpretación restrictiva de los estatutos penales. Véase *Pueblo v. Arandes de Celis*, 120 D.P.R. 530, 538 (1988), y casos citados.

Y *finalmente*, presumimos que la Comisión senatorial conocía que el licenciado Nazario Álvarez estaba autorizado a ejercer el notariado, y conforme la Ley Notarial de Puerto Rico podía tomar juramentos. Aún así, elaboró y aprobó un reglamento que circunscribió esa facultad a sólo su Presidente y a sus miembros. De paso, debemos aclarar que no hay constancia alguna en los autos de que la actuación del licenciado Nazario Álvarez como Secretario Ejecutivo fuera en calidad de notario, lo que hubiese implicado la observancia estricta de los trámites dispuestos en la Ley Notarial de Puerto Rico referentes a anotar el *jurat* en su Registro de Afidávit y, subsiguientemente, haberlo incluido en su informe al Director de la Oficina de Inspección de Notarías.

No podemos ignorar esta realidad; tampoco el texto del reglamento especial que el Senado adoptó para gobernar los procedimientos internos de esta Comisión; se trata de una zona vital otorgada expresamente por la Constitución a dicha rama de gobierno. Esta circunstancia, unida al principio de legalidad, militan contra la sentencia.

*Se dictará sentencia revocatoria.*

La Juez Asociada Señora Naveira de Rodón se inhibió.